UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MICHIGAN KIDNEY CONSULTANTS, P.C.**,
a Michigan professional corporation,

       Plaintiff,

v.

**ARHC CAROCMI01, LLC,**
a foreign limited liability company,

       Defendant.

Case No.

Hon.

---

Ryan Lee Perry (P55545)
Geoffrey S. Wagner (P70839)
GIARMARCO, MULLINS & HORTON, P.C.
Attorneys for Plaintiff
Tenth Floor Columbia Center
101 W. Big Beaver Rd.
Troy, MI 48084-5280
(248) 457-7000
rperry@gmhlaw.com
gwagner@gmhlaw.com

---

## COMPLAINT FOR SPECIFIC PERFORMANCE AND DECLARATORY RELIEF

---

Plaintiff, Michigan Kidney Consultants, P.C., by and through its counsel, Giarmarco, Mullins & Horton, P.C., states the following in support of its Complaint:

## THE PARTIES, JURISDICTION & VENUE

1.  This is a commercial lease dispute; the central issue is whether the parties' Lease Agreement has, in fact, been extended for another 3-year term (i.e., through 2/29/28).

2.  Plaintiff, Michigan Kidney Consultants, P.C. ("MKC"), is a Michigan professional corporation with its principal place of business in Sterling Heights, Michigan.

3.  Defendant, ARHC CAROCMI01, LLC ("ARHC"), is a foreign limited liability company organized under Delaware law; its Members are citizens of the State of Delaware.

4.  ARHC conducts substantial business in the State of Michigan.

5.  This Court has diversity jurisdiction pursuant to 28 U.S.C. Sec. 1332 because:

    a.  The amount in controversy is in excess of $75,000.00, exclusive of costs, interest and attorney fees;

    b.  The Plaintiff is a citizen of the State of Michigan; and

    c.  The Defendant is a citizen of the State of Delaware.

6.  This Court has jurisdiction to issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. Sec. 2201, *et seq.,* because an actual

controversy exists between the parties with respect to their rights in commercial real estate and, in particular, MKC's Lease Agreement with ARHC regarding the same.

7.    Venue is proper in this Court because all of Plaintiff's claims relate to the Subject Property, which is located in the County of Macomb, State of Michigan.

## GENERAL ALLEGATIONS

8.    Plaintiff restates all prior allegations as if fully set forth herein.

9.    At all relevant times, MKC leased a 5,531 square-foot suite in a medical office building located at 1886 W. Auburn Road, Ste. 300, Rochester Hills, MI 48309 (the "Subject Property") from ARHC.

10.    MKC is a medical practice that specializes in nephrology. Its mission statement is set forth below:

## Mission Statement

At Michigan Kidney Consultants, our mission is to provide exceptional, comprehensive, and compassionate nephrology care to enhance the quality of life for individuals living with kidney diseases. Through our unwavering commitment to excellence, innovation, and patient-centered care, we aim to be at the forefront of advancements in kidney care. Our dedicated team of experienced nephrologists and healthcare professionals collaborates closely to deliver personalized treatment plans, leveraging cutting-edge technology and evidence-based practices. With a focus on education, empowerment, care at home and support, we aspire to not only manage kidney disorders but also to inspire proactive wellness strategies for our patients.

(*See*   https://www.michigankidney.com/about-us/mission-statement/)   (Last visited on 2/25/25).

11.    At all relevant times, MKC used the Subject Property as a Vascular Access Center, where its physicians performed surgical procedurals for dialysis patients in an office setting (i.e., as opposed to the hospital setting which, inevitably, is more expensive and time-consuming).

12.    Given the nature of its nephrology practice, MKC's patients tend to be extremely ill and fragile.

13.    On February 22, 2022, the parties' Lease Agreement became effective. (*See* **Exhibit A**, Lease Agreement).

14.    The Lease Agreement provided for a term of three (3) years and was originally set to expire on February 28, 2025.

15.    However, in October of 2024, the parties verbally agreed to extend their Lease Agreement for another 3-year term.

16.    Accordingly, on October 30, 2024, ARHC's agent, Justin McKanna, sent a First Amendment to Lease to MKC's Executive Director, David McKay, which confirmed the 3-year extension and the base rent amount(s) for the ensuing term:

| Time Period during Extension Term | Base Rent Per Rentable Square Foot | Monthly Base Rent | Annual Base Rent |
|---|---|---|---|
| March 1, 2025 – February 28, 2026 | $18.75 | $8,642.19 | $103,706.25 |
| March 1, 2026 – February 28, 2027 | $19.31 | $8,900.30 | $106,803.61 |
| March 1, 2027 – February 29, 2028 | $19.89 | $9,167.63 | $110,011.59 |

(*See* **Exhibit B**, J. McKanna and D. McKay Email Thread).

17.    The parties then exchanged several emails regarding the common area maintenance ("CAM") charges set forth in the Lease, and the manner in which

those charges were calculated by ARHC for the next 3-year term. (*Id.*).

18. MKC signed the First Amendment to Lease on December 18, 2024, and provided a copy of the same to ARHC on January 9, 2025. (*Id.; See also* **Exhibit C**, First Amendment to Lease).

19. On January 31, 2025, MKC's outside corporate legal counsel, Alexander Lebedinski, wrote ARHC's agent, Justin McKanna, and inquired as to the status of the fully-executed First Amendment to the Lease. (*See* **Exhibit D**, A. Lebedinski and J. McKanna Email Thread).

20. Having received no response to his email, Attorney Lebedinski followed up with Mr. McKanna on February 4, 2025 and, again, requested a status update from ARHC. (*Id.*).

21. On February 14, 2025, ARHC's agent, Justin McKanna, finally responded to Attorney Lebedinski and – in a shameful about-face – informed him that "the landlord was moving in a different direction with the building and will not be renewing the Michigan Kidney Lease that expires at the end of the month." (*Id.*).

22. At no point prior to Mr. McKanna's 2/14/25 Email did ARHC seek to revoke or withdraw its offer to extend the parties' Lease for another 3-year term.

23. MKC signed the First Amendment to Lease well *before* the time Mr. McKanna sent his 2/14/25 Email; therefore, the attempted revocation had *no* legal effect, whatsoever, as the Lease had *already* been extended pursuant to the mutual

agreement of the parties.

24.   If ARHC is permitted to move forward with the unlawful eviction it has

threatened to commence next month, MKC and its patients will suffer immediate

and irreparable harm.

25.   In particular:

   a.   If MKC's dialysis patients are deprived of access to vascular access

   services at the Subject Property, they will face a greater risk of blood clots

   and other ailments associated with delays in nephrology care; and

   b.   Given the unique nature and build-out of MKC's Vascular Access Center,

   the process of locating and moving into a new facility would take, at a

   minimum, several months to complete.

26.   With the parties now at an impasse, MKC brings this action to:

   a.   Compel specific performance of the parties' Lease Agreement, as

   amended by the First Amendment thereto; and

   b.   Obtain a declaratory judgment which provides that:

      i.   ARHC waived its right to dispute (i.e., via the statute of frauds

      and/or other contract law principles) the fact that the parties' Lease

      Agreement was extended for another 3-year term; and

      ii.   ARHC's putative defenses are, likewise, barred by the doctrine of

      equitable estoppel.

## COUNT I
## <u>SPECIFIC PERFORMANCE</u>

27.   Plaintiff restates all prior allegations as if fully set forth herein.

28.   On or about February 22, 2022, the parties entered into a valid Lease Agreement.

29.   In October of 2024, the parties verbally agreed to extend their Lease Agreement for another 3-year term.

30.   On October 30, 2024, ARHC's agent, Justin McKanna, sent a First Amendment to Lease to MKC's Executive Director, David McKay, for review and signature. (*See* **Exhibit B**, J. McKanna and D. McKay Email Thread).

31.   MKC signed the First Amendment to Lease on December 18, 2024, and provided a copy of the same to ARHC on January 9, 2025. (*Id.; See also* **Exhibit C**, First Amendment to Lease).

32.   On February 14, 2025, ARHC reneged on the parties' renewal agreement and, thereafter, took the position that the First Amendment to Lease was null and void.

33.   MKC signed the First Amendment well *before* the time of Mr. McKanna's 2/14/25 Email; therefore, the attempted revocation had *no* legal effect, as the Lease Agreement had *already* been extended pursuant to the mutual agreement of the parties.

34.   Under Michigan law, specific performance of an agreement is an appropriate remedy where enforcement of a given promise is necessary to avoid injustice.

*Thermatool Corp v. Borzym*, 227 Mich. App. 366, 375; 575 NW2d 334 (1998).

35.    Here, specific performance of the parties' Lease Agreement, as amended by the

First Amendment thereto, is necessary to avoid an injustice for the reasons set

forth *supra* in this Complaint.

**WHEREFORE**, this Court should enter an Order that: (**1**) compels specific

performance of the Lease Agreement, as amended by the First Amendment thereto; (**2**)

extends MKC's tenancy through 2/29/28; (3) awards reasonable attorney fees to MKC

under ¶ 23 of the parties' Lease Agreement; <u>and</u> (**4**) grants any other relief deemed fair

and equitable under the circumstances of this case.

**COUNT II**
**<u>DECLARATORY JUDGMENT (WAIVER)</u>**

36.    Plaintiff restates all prior allegations as if fully set forth herein.

37.    Under Michigan law, waiver is defined as the intentional relinquishment of a

known right. *Angott v. Chub Group Ins. Co.,* 270 Mich. App. 465, 469-70; 717

N.W.2d 341 (2006).

38.    In attempting to establish a waiver, a party may rely on express agreement(s) or,

alternatively, inferences drawn from declarations/acts/conduct/etc. *Id.*; *See also*

32 A.L.R. 4th 452, WAIVER OR ESTOPPEL AS TO NOTICE REQUIREMENT FOR

EXERCISING OPTION TO RENEW OR EXTEND LEASE, § 12 (Westlaw, 2021)

(citing cases and explaining that, in cases involving leases of real property with

options to renew or extend, "lessors had waived, or been estopped from

−8−

asserting, their rights to notice where they had joined in the appointment of arbitrators for the purpose of fixing rent applicable to the additional terms").

39. Here, ARHC waived its right to dispute (i.e., via the statute of frauds and/or other contract law principles) the fact that the parties' Lease Agreement was extended for another 3-year term in each of the following ways:

   a. Confirming the extension in writing, via multiple email communications to/from MKC's agent;

   b. Confirming the extension verbally, via multiple phone conferences with MKC's agent;

   c. Engaging in a lengthy back-and-forth regarding CAM expenses for the next three (3) years, without ever questioning the manner in which MKC had accepted ARHC's offer to extend the parties' Lease for another term; and

   d. Causing MKC to reasonably believe that the Lease had been extended and, thus, no further action was required to: (i) preserve its contractual right to same; and/or (ii) attempt to find a new location for its professional medical practice.

   **WHEREFORE**, this Court should enter a declaratory judgment that: (**1**) finds that ARHC waived its right to dispute (i.e., via the statute of frauds and/or other contract law principles) the fact that the parties' Lease Agreement was extended for

another 3-year term; and (**2**) grants any other relief deemed fair and equitable under the

circumstances of this case.

## COUNT III
## DECLARATORY JUDGMENT (EQUITABLE ESTOPPEL)

40.    Plaintiff restates all prior allegations as if fully set forth herein.

41.    Under Michigan law, equitable estoppel precludes a party from exercising contractual rights because of his own inequitable conduct toward the party asserting the estoppel. *Bloemaker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 443-44 (6th Cir. 2010).

42.    For equitable estoppel to apply, the party asserting estoppel must establish that:

      a.  The defendant's acts or representations induced the plaintiff to believe that the pertinent clause would not be enforced;

      b.  The plaintiff justifiably relied on this belief; and

      c.  The defendant was prejudiced as a result of its reliance on its belief. *Morales v. Auto–Owners Ins. Co.*, 458 Mich. 288, 295-97; 582 N.W.2d 776 (1998).

43.    Along similar lines, and as noted by the Michigan Court of Appeals:

> Defendant[] cannot be allowed to cajole plaintiff[] into believing that verbal notification was sufficient and then wait silently until the option's expiration date to assert technical deficiencies in the plaintiff's performance.

*Pieger v. Bouwman*, 61 Mich. App. 558, 561; 233 N.W.2d 82 (1975).

44.    Here, ARHC should be equitably estopped from disputing (i.e., via the statute of

frauds and/or other contract law principles) the fact that the parties' Lease Agreement was extended for another 3-year term because:

    a. ARHC confirmed the extension in writing, via multiple email communications to/from MKC's agent;

    b. ARHC confirmed the extension verbally, via multiple phone conferences with MKC's agent;

    c. ARHC engaged in a lengthy back-and-forth regarding CAM expenses for the next three (3) years, without ever questioning the manner in which MKC had accepted ARHC's offer to extend the parties' Lease for another term;

    d. ARHC caused MKC to believe that the Lease had been extended and, thus, no further action was required to preserve its contractual right(s) to the same;

    e. MKC justifiably relied on its belief that the Lease had been extended and, in turn, it: (i) incurred significant costs/expenses/etc. relative to the Subject Property; and (ii) did not look for an alternative location for its nephrology practice; and

    f. MKC will be prejudiced if ARHC is permitted to repudiate the parties' extension of their Lease Agreement. Specifically, it will be forced to abruptly close its Rochester Hills office which, in turn, will cause

irreparable damage to: (i) MKC's professional medical practice; (ii) the care of its patients; and (iii) the wellbeing of the Greater Rochester community.

**WHEREFORE**, this Court should enter a declaratory judgment that: (**1**) finds that ARHC's ability to dispute (i.e., via the statute of frauds and/or other contract law principles) the fact that the parties' Lease Agreement was extended for another 3-year term is barred by the doctrine of equitable estoppel; <u>and</u> (**2**) grants any other relief deemed fair and equitable under the circumstances of this case.

Respectfully submitted,

**GIARMARCO, MULLINS & HORTON, P.C.**

By: */s/ Geoffrey S. Wagner*
    Ryan Lee Perry (P55545)
    Geoffrey S. Wagner (P70839)
    Attorneys for Plaintiff

Dated: February 26, 2025